Cite as 2025 Ark. App. 600

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-24-637

| | |
|---|---|
| RICHARD LEE BULLOCK<br><br>APPELLANT<br><br>V.<br><br>ECIL SWAN<br><br>APPELLEE | **Opinion Delivered** December 10, 2025<br><br>APPEAL FROM THE WHITE COUNTY CIRCUIT COURT<br>[NO. 73PR-23-308]<br><br>HONORABLE DANIEL C. BROCK, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Richard Lee Bullock, Ecil Swan, and Marita Jane Swan are among the natural children of Alice M. Byrd. Alice executed a will in 2015 that devised all her property to Ecil and Marita. After Alice's death, Richard petitioned to take an intestate share of her estate as a pretermitted child under Ark. Code Ann. § 28-39-407(b) (Repl. 2012). The circuit court denied his petition. We affirm.

Alice bore six children. She gave her daughter Janet up for adoption at birth. One son had three children that Alice legally adopted. Another son, Logan, predeceased her leaving three children behind. Alice named all these children and grandchildren in her will. Most names are not important; in the following excerpt from Alice's will, we replace Janet with "GIVEN UP," each adopted grandchild with "ADOPTED," and each of Logan's children with "GRANDCHILD" for ease of communication:

I declare that I have eight children now living whose names are Richard Lee Bullock, Marita Jane Swan, Randi Scot Swan, Ecil E. Swan, GIVEN UP, ADOPTED, ADOPTED, and ADOPTED. I have one deceased child, Logan Swan. All references [in] this Will to "my child or children" includes only the above referenced children. I specifically leave nothing to GRANDCHILD, GRANDCHILD, GIVEN UP and GRANDCHILD in this Last Will and Testament.

The will then provides that either Ecil or Marita would take six specific categories of property and split the residue of the estate.

Richard concedes he is "mention[ed]" in the will excerpt above. But Alice did not devise anything to him (as she did for Ecil and Marita) or specifically devise *nothing* to him (as she did for Janet and the grandchildren). He argues she thus "omit[ted] to . . . provide for" him by expressing what he would take, which he argues was a second requirement to avoid the pretermitted-child statute:

> (b) PRETERMITTED CHILDREN. If, at the time of the execution of a will, there is a living child of the testator . . . whom the testator shall *omit to mention or provide for, either specifically or as a member of a class*, the testator shall be deemed to have died intestate with respect to the child . . . .

Ark. Code Ann. § 28-39-407(b) (emphasis added). Richard's efforts on appeal are nothing short of heroic. But he needed more: His argument would invert the construction our supreme court has given the pretermitted-child statute for more than a century. *See Brown v. Nelms*, 86 Ark. 368, 112 S.W. 373 (1908).

From 1837 to 1949, a predecessor statute applied, by its terms, "[w]hen any person shall make his last will and testament, and omit to mention the name of a child, if living." Pope's Digest § 14525 (1937) (formerly Rev. Stat. Ch. 157 § 12 (1838)). Then, at least, it imposed just one requirement: to mention the child in the will—and not necessarily by name, despite that "mention the name" language. The supreme court held that "[a]ny

allusion to the child" that showed the testator had not forgotten him was enough to avoid the statute. *Culp v. Culp*, 206 Ark. 875, 880, 178 S.W.2d 52, 54 (1944). So virtually any reference would do. In *Badgett v. Badgett*, a testator sufficiently demonstrated intent to disinherit when her will referred to her children only in a request to appoint a guardian for them. 115 Ark. 9, 170 S.W. 484 (1914). In *Taylor v. Cammack*, the children were mentioned as the "heirs" in this sentence: "I desire that [my wife] act as my executor without bond, and full power to sell and dispose of it in his (its) judgment it is necessary for the payment of debts, or to the advantage of the estate, or of the heirs." 209 Ark. 983, 984, 193 S.W.2d 323, 324 (1946). They were not pretermitted.

In *Brown*, a keystone in this line of cases, the court explained:

[W]hat was intended by the statute was to declare intestacy as to children of a testator, and thus provide compulsory provisions for them, unless the testator expresses a contrary intention in the will toward the children. Such an intention may be expressed by the testator in his will by providing for them as a class without naming them separately, *or by naming them without providing for them*.

86 Ark. at 385, 112 S.W. at 378 (emphasis added). Even if mentioning a child's name was not *necessary* to avoid the old statute, it *was* sufficient.

Richard argues these cases aren't controlling because they were decided before 1949, when the General Assembly enacted the language with what he sees as two requirements to avoid pretermission. Act 140 of 1949, § 39. Section 39 of Act 140 consolidated the pretermitted-child statute with a neighboring one, which provided that a testator would be deemed intestate as to children born after he made a will if he died leaving them "neither provided for nor in any way mentioned" in it. Pope's Digest § 14524. (We will call it the

3

"afterborn-child" statute.)  In the new statute, the General Assembly used the mention-or-provide-for language from the old afterborn-child statute in the pretermitted-child part too:

>    (a) SUBSEQUENTLY BORN OR ADOPTED CHILDREN.  Whenever a child shall have been born to or adopted by a testator after the testator has made his or her will, and the testator shall die leaving the after-born or adopted child not mentioned or provided for in his or her will either specifically or as a member of a class, the testator shall be deemed to have died intestate with respect to the child. . . . .

>    (b) PRETERMITTED CHILDREN.  If, at the time of the execution of a will, there is a living child of the testator, or living child or issue of a deceased child of the testator, whom the testator shall omit to mention or provide for, either specifically or as a member of a class, the testator shall be deemed to have died intestate with respect to the child or issue. . . .

Ark. Code Ann. § 28-39-407.

Richard argues a change in statutory language must import a change in meaning. Often so.  But this was just one of hundreds of statutes Act 140 enacted and repealed as part of our modern Probate Code.  We think the General Assembly was just making the new pretermitted-child statute read as the supreme court had interpreted the old one.

By then, there was not much daylight between what the afterborn-child statute and the pretermitted-child statute required to avoid intestacy.  The afterborn-child statute had never purported to require a testator to "mention the name" of a child.  (For a good practical reason: that statute applied to children who had not been born when the will was made, and presumably did not yet have names.)  Also, despite the words "mention the name" in the pretermitted-child statute, the *name* of an existing child was not needed either.  Then-fresh cases like *Culp* (1944) and *Taylor* (1946) reaffirmed that virtually any acknowledgement of a child or children as a class would do.  The only material difference between the statutes,

4

as interpreted, was that one applied to children born before a will was made, and one applied to children born afterward.

Now, return to the current statute's language. The consequence of intestacy is introduced by the condition that there is a living child "whom the testator shall omit to mention or provide for, either specifically or as a member of a class" in the will. Ark. Code Ann. § 28-39-407(b). Richard argues that the word "or" means the condition is triggered if the testator shall "omit to mention" or "omit to provide for" the child; if one is missing, the condition is met. That would make the words "mention or provide for" mean "mention *and* provide for"—which would have been the straightforward way to express that both were required. More importantly, that is not the end of the condition: the testator must omit to mention or provide for the child "either specifically or as a member of a class." *Id*.

Whatever merit Richard's argument might have in the abstract, for two generic verbs in this construction, falls to the surplusage problem created by applying it to the verbs section 407(b) uses, if we construe them as Richard wishes. If to "provide for" a child in a will means saying what (if anything) he takes, we fail to see how a testator could "provide for" the child—particularly, "specifically"—without "mention[ing]" him in the process. If to "mention" a child is not an alternative way to avoid intestacy, in other words, what role could the word "mention" play in section 407(b)? As Richard interprets the statute, mentioning a child's name without providing some disposition—which would have sufficed under the strictest reading of the old statute—is now no better than omitting the name too.

5

The statutory language simply cannot bear the interpretation Richard gives it. Having concluded so, we note two things more. First, our supreme court has already rejected an argument that both to "mention" and to "provide for" a child are required under the current statute. In *Dykes v. Dykes*, the court held that the testator's child was "mentioned as a class" in the statement, "My children know that my wife and I love them dearly, and I am certain that they realize that she will dispose of any property of mine in a manner which is consistent with the love and affection we feel for the children." 294 Ark. 158, 159, 741 S.W.2d 256, 256 (1987). No more was required: "The statute does not permit children to take against the will simply because the testator failed to make provision for them in the will; if the testator mentioned the children, specifically or as a class, the statute does not apply and the children are not pretermitted." *Id*. at 159–60, 741 S.W.2d at 257. And in *Petty v. Chaney*, the court considered the post-Act 140 option to "provide for" a child and concluded that the 1949 amendment "clarified the statute and *widened* the testator's choices" from the former version "by stating that he might mention or provide for the child." 281 Ark. 72, 74, 661 S.W.2d 373, 374 (1983). Richard's interpretation would instead *narrow* the testator's choices dramatically.

Finally, our conclusion that Act 140, section 39 conformed the pretermitted-child statute's text to its accepted meaning has unusually direct support. In official commentary cited by our supreme court, the drafting committee for the Probate Code described it as "a restatement, with an effort at clarification, of [Pope's Digest §§] 14524 and 14525"—the old afterborn-child and pretermitted-child statutes. *Parker v. Bowlan*, 242 Ark. 192, 198,

6

412 S.W.2d 597, 601–02 (1967) (quoting Ark. Stat. Ann. § 60-507 cmt. (Supp. 1949)).  A

"restatement," in that sense, is an expression of the existing law on a subject.[1]

Richard concedes, as he must, that he is "mentioned" in Alice's will.  That was

enough to prevent intestacy under Ark. Code Ann. § 28-39-407(b), and the circuit court

appropriately denied his petition to take as a pretermitted child.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Buck C. Gibson, P.A.*, by: *Buck C. Gibson*, for appellant.

*Tim Cullen*, for appellee.

---

[1]The introduction to the American Law Institute's first published volume described the Institute's task as the "preparation of an orderly restatement of the common law, including in that term not only the law developed solely by judicial decision but also the law which has grown from the application by the courts of generally and long adopted statutes."  Restatement of Contracts, intro. at viii–ix (Am. L. Inst. 1923).